HINCHMAN v. ADMRS. OF EMANS et al.

It is not a necessary consequence, when the legal and equitable titles meet in the same person, that the equitable title becomes merged in the legal. When the holder of a mortgage takes a release or conveyance of the equity of redemption, a court of chancery will consider the mortgage as subsisting, when the purposes of justice require it.

There are four species of fraud :—

1. Fraud may arise from facts and circumstances of imposition.

2. It may be apparent from the intrinsic value and subject of the bargain itself—such as no man in his senses, and not under delusion, would make on the one hand, and as no honest or fair man would accept on the other.

3. It may be inferred from the circumstances and condition of the parties contracting ; for it is as much against conscience to take advantage of a man's weakness or necessity, as his ignorance : And,

4. It may also be collected from the nature and circumstances of the transaction, as being an imposition on third persons.

Where A., who held a mortgage and bonds, given for purchase money, in 1814, voluntarily relinquished the mortgage, cancelled the bonds, and took another mortgage for the same debt in 1817, knowing that an intervening mortgage on the same premises, given in 1816, was outstanding ; and upon a sale of the premises in 1818, consented to give up his mortgage of 1817; and that B., the assignee of the outstanding mortgage of 1816, should take a new mortgage on the premises for his debt, as a first lien ; and he, (A.) would take another mortgage, in place of his mortgage of 1817, as a second lien on the premises—and the two mortgages were executed accordingly,— B.'s mortgage bearing date on the 1st of April, and A.'s mortgage on the 2d April, 1818, and recorded in the same order, so as to give priority to the

mortgage of B.:—although A. was infirm at the time, and his faculties in some measure impaired, yet being attended by a friend who acted as his agent, and assisted in the transaction of the business, when the order of priority was spoken of and understood: even if the parties were mistaken in the principle on which they acted, (that B.'s mortgage of 1816 was legally entitled to a priority over A.'s mortgage of 1817,) without any concealment or misrepresentation on the part of B., it does not come within any of the descriptions of fraud ; and A. or his representatives are not entitled to have B.'s mortgage of 1st April, 1818, postponed, so as to give priority to A.'s mortgage of the 2d of the same month.

Where the change of securities was voluntary, and it does not appear that any artifice was made use of, to induce him to take the second mortgage, A. cannot be permitted to disavow or avoid the operation of an agreement entered into with a full knowledge of the facts, on the ground of his ignorance of the legal consequences flowing from these facts.

THE bill in this case, was filed by Guy M. Hinchman, against Peter Wortman and Isaac Emans, administrators of Nicholas Emans, deceased, and the heirs of said Nicholas Emans, defendants.

The object of the suit was to obtain a foreclosure, and sale of certain mortgaged premises, in the county of Morris. The mortgage on which the bill was filed, was given by Japhet B. Chidester, to one Cummins Oliver, to secure the payment of one thousand one hundred and thirty dollars, and bore date on the 1st, and was registered on the 6th day of April, 1818. Accompanying the mortgage, were four several bonds, given by Chidester to Oliver, for two hundred and eighty-two dollars and fifty cents, each. On the 1st of April, 1824, Oliver and wife, in consideration of one thousand five hundred and seventy-five dollars, assigned all their interests in the bonds, and mortgaged premises, to the complainant, subject to a certain agreement, between the said Chidester and Oliver, of the 16th of March, 1824 ; by which Chidester and wife, released to Oliver, their right, or equity of redemption, in the mortgaged premises,—and Oliver released to Chidester, all claim and demand, as against his personal property, on one of the bonds. On the 1st of April, 1824, the complainant took possession of the property, and received the rents and profits thereof, which have all been expended, as he alleges, in necessary repairs. The bill then charged, that the complainant had been informed, that the said Chidester, on or about

the 2d day of April, 1818, executed an indenture of mortgage to one Nicholas Emans, on the same premises, to secure the payment of one thousand and fifty-five dollars. Emans died in May, 1821, intestate, and letters of administration upon his estate were granted to Peter Wortman and Isaac Emans.

The defendants, in their answer, admitted that the mortgage and bonds were executed to Oliver; but denied that they were executed on the 1st day of April, or for a valuable consideration; and insisted that they were fraudulent and void, and not entitled to priority of payment, as against the bond and mortgage of the defendants. They alleged that, on the 1st day of April, 1818, the said Nicholas Emans held a mortgage on said premises, from one Jonathan Oliver and wife, given on the 27th day of May, 1817, to secure the payment of one thousand and fifty-five dollars and ninety-four cents, being part of the consideration money, for which Emans had theretofore sold the said premises. That after the execution and delivery of this last mentioned mortgage, Jonathan Oliver became embarrassed in his affairs, and gave a deed for the property to Cummins Oliver, the consideration of which was, that Cummins Oliver was to pay off the debt to Emans. On the 1st day of April, 1818, this mortgage was still outstanding and unpaid; and on the same first day of April, Cummins Oliver conveyed the mortgaged premises to Japhet B. Chidester, and proposed to Emans, who was then feeble and infirm, that he should take the bonds and mortgage of Chidester, in the place and stead of the bonds and mortgage of Jonathan Oliver, for the like amount, and with the same priority of lien, that he then had and held. That, to quiet all fears, and the more successfully to execute and accomplish his fraudulent designs, Cummins Oliver executed, and gave to Emans, a bond of indemnity, in the sum of two thousand dollars, to indemnify him against all incumbrances on the premises from the 19th of April, 1814, to the said 1st of April, 1818. That the said bonds and mortgage of Chidester, were accordingly given for one thousand and fifty-five dollars, and dated on the 2d of April, instead of the 1st, without the knowledge of the said Emans. The defendants further stated, that the bonds and mortgage given to Cummins Oliver, and mentioned in the bill, were not discover-

ed till afterwards, having been artfully concealed from Emans : that they were given under a pretended claim set up by Cummins Oliver, to the said mortgaged premises, by virtue of a mortgage given by one Jason King to Jonathan Oliver, which had come into the hands of Cummins Oliver, and which the defendants aver to be fraudulent and void, having been given by a person who never had any title to the premises, and this known to the said Cummins Oliver, who fraudulently caused the mortgage of Chidester to him, to be recorded before the mortgage to Emans, and is now seeking through the cover of an assignment, without consideration, to execute his fraudulent purpose. They stated further, that the complainant paid no consideration for the assignment, and that he had full notice of the mortgage of Oliver and Chidester to Emans ; that he was present on the 1st of April, 1818, when the arrangement took place between Emans and Cummins Oliver, and subscribed his name as a witness to the bond of indemnity. The defendants admitted that the bonds of Jonathan Oliver to Emans were cancelled, but not the mortgage, which is now in their possession ; and they insisted that they ought to be ordered to stand as an existing and prior lien on the property—or that the bonds and mortgage from Chidester to Emans should be first paid.

Evidence was taken on both sides, and the cause came on to be heard on the pleadings and proofs.

*Van Arsdale, sen.* for the complainant.

The mortgage under which we claim, was given by J. B. Chidester to Cummins Oliver, and by him assigned to complainant. It is dated 1st April, 1818, and recorded 6th April. The defendants' mortgage was given by Chidester to Emans, and is dated 2d April, 1818, and recorded the 8th April : upon the same premises, in point of date and registry, the complainant has the prior right. Before the execution of these mortgages, C. Oliver had two bonds and a mortgage, given by J. King, of 21st May, 1816, and N. Emans held bonds and a mortgage given by Jonathan Oliver, on the 27th May, 1817, upon the same premises. C. Oliver then had the oldest mortgage. After the sale to Chidester, on the 1st April, 1818, the parties met, to give up the

Oct. 1830.

Hinchman
v.
Admrs. of
Emans et al.

Oct. 1830.

Hinchman
v.
Admrs. of
Emans et al.

old securities and take new mortgages in lieu of them. It was then understood and agreed, that C. Oliver's mortgage was to have priority, and Emans's to be the second lien on the property; and the present mortgages were executed accordingly.

The *first* point of defence, is, that the complainant's mortgage is falsely dated on the 1st April, when in fact it was executed on the 2d of April. The evidence (to which the counsel here adverted) proves that the mortgages were executed on the days they respectively bear date. The *second* point is, that the complainant's mortgage was not given for a valuable consideration. C. Oliver had paid the money and taken an assignment of the King mortgage, and two bonds of 1816, and paid other debts for Jonathan Oliver, who afterwards released to him the equity of redemption of the mortgaged premises; he conveyed to Chidester, and the mortgage of 1st April, 1818, is for purchase money on that sale. But the defendants say, King, who gave the bonds and mortgage of 1816, was not the person who had the title, and the bonds and mortgage were fraudulent : this they are bound to prove. Whatever is set up in avoidance of the plaintiff's claim, must be proved. 2 *John. C. R.* 89 ; 3 *Mason*, 390. The only witness adduced in support of this allegation, is proved to be unworthy of credit, and contradicted as to facts by other witnesses and documents that establish the validity of the mortgage. The *third* ground of defence is, that our mortgage was fraudulently procured to be first registered. The witnesses present at the execution prove that our mortgage was to have priority. But if the transaction of 1st April, 1818, was fraudulent, things ought to be restored to their original situation ; we should then stand upon the King mortgage, of 1816, and still have the priority. Another objection will probably be raised, that Emans was incapable of business : this must also fail. From the evidence it appears he understood and assented to what was done. Wortman, now one of the defendants, was then acting as his agent, and assisted in transacting the business. Emans and his representatives are bound by it. *Paley on Ag.* 2, 138, 142, 143, 249 ; 1 *Livermore, A.* 45, 349 ; 2 *Liver.* 306, 249. They further pretend the assignment to the complainant was fraudulent. The evidence shows that the assignment was bona fide, and the complainant took the mortgage in his own right. *Lastly,*

they said that the complainant had notice of all these matters : of this there is no evidence.

*T. Frelinghuysen,* for the defendants.

We complain that an imposition was practised on a feeble old man, unable to take care of his rights. The argument for the complainant, is, that the King bonds and mortgage were a subsisting lien on the property in 1818, and the rights as to priority were not changed by the new securities. We insist that the King mortgage was not a subsisting lien in 1818. The first title paper in evidence is a mortgage on these premises, given by Howell to Emans, in 1809. Emans bought the property at sheriff's sale in 1812, and in June, 1814, sold it to Jonathan Oliver for one thousand and fifty dollars, and took the mortgage of that date for the purchase money. J. Oliver conveyed it to King in May, 1816, and took of him a mortgage and four bonds, two of which Emans got, probably as collateral security. On the 3d May, 1817, King re-conveyed the property to J. Oliver, who was to take up and deliver to King his two bonds outstanding, said to have been pledged to Condict and Halliday ; and Cummins Oliver became security for his performance. On the 27th May, 1817, Jonathan Oliver renewed his mortgage to Emans for the original debt which accrued for the purchase money, in 1814 ; for which Emans always retained a lien on the premises, and this mortgage could not be affected by the intermediate mortgage of 1816, which was given subject to our lien. If Cummins Oliver paid off the King bonds to Halliday, the bonds ought to have been delivered up to King, and the lien of the mortgage was extinguished : instead of which, Oliver took an assignment of the bonds and mortgage. If this was *bona fide* upon Jonathan Oliver's releasing the equity of redemption to Cummins Oliver, the equitable and legal estates became united in him ; the mortgage interest became merged in the legal estate, and the lien of the King mortgage was extinguished. We complain, that after all this, they should prevail upon this infirm old man, Emans, to give up his lien and suffer a prior mortgage to be given to Cummins Oliver, which would sweep away the whole property. The witnesses assign no reason why the mortgage to Emans was postponed,

14

except that it might have been that the King mortgage was the oldest; and one of them declares, he cannot say that Emans understood the mortgage to Oliver was to have priority, or that he heard the instructions given to the scrivener. There was no money paid, no consideration to induce Emans to give up his priority, and no one can account for it. This amounts to a legal fraud. 1 *Fonb. Eq.* 124, 164. No man in his senses, and not under some delusion, could have been induced to make such a contract. His situation, as described by the witnesses, rendered him liable to imposition, and from the fact of his incapacity, and nature of this transaction, the court would infer that some undue means had been used. Wortman, as a general agent, had no power to deal away the vested rights of Emans. They dealt with Emans, not with Wortman. He got no power of attorney, till September, 1819. We are in possession of two facts. 1. That we had the prior lien on the 1st April, 1818. 2. That Emans's mortgage was postponed by this arrangement, at a time when he was incapable of transacting business. But again, the mortgage of 1814 is still in our hands, uncancelled. Taking the after mortgage is no extinguishment. When two securities are of equal degree, the one does not extinguish the other. 2 *Bac. Ab. Tit. Extinguishment.* It must be averred and proved, that a higher security is taken in satisfaction of a lesser; there is no presumption in that case, much less when the securities are equal. 1 *Mason*, 506. Although other points in the answer are unsupported, that does not impair our defence on the grounds I have stated. We pray to be restored to our securities as they stood on the 1st of April, 1818.

*Van Arsdale*, in reply.

The bonds of 1814 were given up by Emans for the King bonds; these were given up, and the Oliver bonds of 1817 taken. On the 1st April, 1818, there were no other securities brought forward, than the King bonds and mortgage of 1816, by Cummins Oliver, and the J. Oliver bonds and mortgage of 1817, by Emans. It is not a question of substitution and extinguishment of one security by the mere taking of another; but of cancellation, and discharge of the lien. They say Emans cancel-

led the bonds of 1814, but not the mortgage : the bonds being cancelled, the lien of the mortgage was gone ; there was no lien of 1814 in existence, on the 1st April, 1818. Emans was then of sufficient capacity. Some of the witnesses on this point speak of his capacity at an after period, which is of no importance. The matter of priority was distinctly understood and agreed to at that time. Wortman was the general agent of Emans ; it was not necessary he should have a power of attorney. They took the act of the agent, and Emans adopted it, and put the mortgage on record. The defence set up is fraud ; the incapacity is brought forward as auxiliary. The fraud alleged in the answer is wholly disproved, and the defendants are obliged to rely on a circumstance not before thought of.

THE CHANCELLOR. The pleadings present two or three points to which the evidence has been directed.

First—It is alleged that the complainant's mortgage was fraudulently dated the 1st of April, when in truth it was executed on the 2d ; or that the defendant's mortgage was fraudulently dated the 2d of April, when in truth it was executed on the 1st. The bonds and mortgage of complainant are dated on the 1st: those given to Emans are dated on the 2d. The mortgages are acknowledged of the same days that they respectively bear date. There is no evidence to show that these acknowledgments are falsely dated. It appears by the testimony of John R. Hinchman, the scrivener, that while he was drawing the writings, he was directed by Cummins Oliver, to date his mortgage and bonds one day the oldest. Emans was present at the time, as was also Peter Wortman, one of the defendants. Cummins Oliver spoke loud enough to be heard by all. Wortman was assisting in the business of Emans, his father-in-law, and drew some of the writings. The testimony of Cummins Oliver is very full as to this matter. He says the papers were acknowledged on different days, and that it was talked of over and over again, and well understood that his mortgage should bear date first and have the priority. The defendants' allegation in this behalf is not sustained by proof.

Secondly—It is alleged that the mortgage from Chidester to Oli-

ver was without consideration, and therefore fraudulent as against the defendants.

The mortgage was given from Chidester to Cummins Oliver, to secure the payment of one thousand one hundred and thirty dollars. It appears that this property, in 1814, belonged to Nicholas Emans, who purchased it at sheriff's sale. In 1814, he sold it to Jonathan Oliver, and took a mortgage on it for one thousand and five dollars. Afterwards, on the 21st of May, 1816, Jonathan Oliver sold the property to one Jason King, for three thousand dollars, who gave a mortgage and four bonds for the purchase money. Two of these bonds were passed to Emans, and two of them Oliver passed elsewhere. Jason King soon after conveyed the property back to Jonathan Oliver, to wit, on the 3d May, 1817. On the 27th of May, 1817, Oliver gave a new mortgage to Emans for one thousand and fifty-five dollars and ninety-four cents, and the bonds accompanying the mortgage of 1814 were cancelled.

It appears further, by the testimony of Cummins Oliver, (for there is no other evidence on the subject,) that when Jason King re-conveyed the premises back to Jonathan Oliver, two of the four bonds which he had given to Jonathan Oliver were outstanding, and Cummins Oliver, with one Hart, became security for the delivery of those bonds to King. Jonathan Oliver represented that they had been pledged, and that about twenty dollars would redeem them. One was represented to be in the hands of Jeduthan Condict, and one in the hands of Samuel Halliday, late sheriff of Morris. Cummins paid eight hundred and twenty-four dollars to take up these bonds, and upon this, Halliday assigned the two bonds and the mortgage to Cummins Oliver. Besides this, he paid other debts for Jonathan Oliver, to the amount of two hundred and fifteen dollars, making in all one thousand and thirty-nine dollars. Cummins alleges that he held these bonds and the mortgage until he got the mortgage from Chidester, in 1818. On the 15th of September, 1817, Jonathan Oliver sold the property to Cummins Oliver, and gave him a deed ; and on the 1st April, 1818, Cummins Oliver conveyed the property to Japhet B. Chidester, for two thousand seven hundred dollars, or thereabouts.

From this, it would seem, that the property was conveyed by Jonathan Oliver to Cummins Oliver in good faith ; he being the

owner of the property, sold to Chidester, and the mortgage given to him by Chidester for the balance of the purchase money, was a mortgage for a valuable consideration. It is not material now to inquire, whether the mortgage and bonds originally given by King and assigned over by Halliday to Cummins Oliver, were existing liens on the property on the 1st of April, 1818 ; or whether or not the transaction between Oliver and King was valid. It is sufficiently proved, that Cummins Oliver advanced upwards of one thousand dollars for Jonathan Oliver, and in satisfaction of his debts. This was a sufficient consideration for the conveyance from Jonathan to Cummins Oliver, subject to the mortgage of Emans, which was upwards of one thousand dollars. There is no pretence of proof that this sale was made subject to the trust (to pay the debt to Emans) mentioned in the answer. Cummins Oliver swears it was an absolute sale ; and in the absence of all evidence on the part of the defendants to the contrary, it must be so considered : and Cummins, being the absolute owner, his conveyance of the property to Chidester, must be taken to be a fair and bona fide transaction. This second ground of the defendants is not supported.

Thirdly—The defendants insist, in the next place, that advantage must have been taken of the imbecility of Emans ; that the giving up of his prior lien could only have been induced by some collusion or contrivance ; that it amounts to a legal fraud, and therefore the Emans mortgage should be preferred. In regard to the prior lien, the complainant denies the pretension of the defendants, and insists that the King mortgage then in the hands of Cummins Oliver, dated in 1816, was a lien on the property ; the mortgage was certainly produced at the time the new mortgages were given, and if it was then operative on the property, it was prior to the mortgage produced there by Emans, because that was given by Oliver in 1817, and the former bonds cancelled. It is contended, however, that the King mortgage was not a subsisting lien on the property in 1818 ; and therefore that the mortgage of Emans from Jonathan Oliver was the oldest lien. However fraudulent the conveyances between Oliver and Jason King may have been, I doubt whether the defendants can set it up at this time as against the complainant. Emans had notice of this conveyance, and of the King mortgage. He actually took

two of the four bonds accompanying the mortgage, probably as collateral security : he made no complaint of fraud at that time. The conveyance did not disturb the lien of his mortgage. The taking of the two bonds from King, the owner of the property, was, if any thing, a sanction on the part of Emans of the lawfulness of his right. Two of the bonds and the mortgage were assigned over to Cummins Oliver, as we have seen, for a valuable consideration ; and although he afterwards purchased of Jonathan Oliver the equity of redemption, I am not prepared to say. that he was not warranted in retaining the mortgage as a securi ty for his title. It is not a necessary consequence, when the le gal and equitable titles unite in the same person, that the equitable title becomes merged in the legal. A court of chancery will consider the mortgage as subsisting, when the purposes of justice require it. I incline to the opinion that the King mortgage was a lien on the property on the 1st of April, 1818, when the two mortgages now in question were given ; but as the view which I take of the case renders it unnecessary to decide that point, I desire to be understood as expressing no definite opinion upon it.

Admitting that, in strictness of law, the King mortgage in the hands of Cummins Oliver was no lien on the property ; are the circumstances attending the execution and delivery of these mortgages, of such character as to call for the equitable interference of this court to alter what appears now to be the legal rights of the parties ? The power of the court is undoubted, and in all proper cases it should be fearlessly, though cautiously exercised.

There are various species of fraud which are the foundation of equitable relief. They are admirably classified by Lord Hardwicke, in the case of *Chesterfield* v. *Jansen*, 2 *Ves.* 155. Fraud may arise from facts and circumstances of imposition : it may be apparent from the intrinsic value and subject of the bargain itself, such as no man in his senses, and not under delusion, would make on the one hand, and as no honest or fair man would accept on the other : it may be inferred from the circum stance and condition of the parties contracting, for it is as much against conscience to take advantage of a man's weakness or necessity, as his ignorance ; and it may also be collected from the nature and circumstances of the transaction, as being an imposi-

tion on third persons. Will this case come properly under any of these species of fraud ? Does the fact that a priority was given to the complainant's mortgage, warrant the inference of fraud and circumvention ? It is very evident, that whether in strictness the King mortgage was a lien or not on the property on the 1st of April, 1818, it was so considered by the parties : they acted on that supposition : both parties may have been mistaken, without subjecting themselves to the imputation of fraud. If Emans was mistaken in regard to this matter, and acted under that mistake, without any improper concealment or misrepresentation on the part of Oliver, and when he might have been advised on the subject if he had taken the precaution ; can he come now into a court of equity for relief ? It does not appear that he was constrained to come into this " new arrangement," as it is called. He had his old mortgage of 1817. The change of the securities was voluntary, so far as we know ; and it does not appear that any artifice was made use of, to induce him to take the second mortgage. Under these circumstances, he cannot be permitted to disavow or avoid the operation of an agreement entered into with a full knowledge of the facts, on the ground of ignorance of the legal consequences flowing from those facts. *Shotwell* v. *Murray*, 1 *Johns. C. R.* 516.

Cummins Oliver assigns, as the reason why the first mortgage was given to him and the second one to Emans, that the King mortgage was older than the one Emans then held ; and therefore he had a priority. This was doubtless the opinion of Wortman, the friend of Emans. He stated that he thought *they* (Emans and himself) *ought to have* the oldest claim ; and he had been at a good deal of trouble and expense in searching records, looking about titles, &c. but it did not turn out so. Emans thought too, that his mortgage should be the oldest ; but it appears finally to have been agreed on that the property was enough to satisfy both mortgages, and that it made but little difference which was first. There is no evidence to show what the actual value of the property was at that time. The first mortgage from Oliver to Emans in 1814, was for one thousand five hundred dollars, and it is safe to conclude that the property was worth at least that amount at that time. Real estate afterwards commanded a higher price in the market. In 1818,

when these mortgages were given, it was not far from its maximum; and if property had not greatly depreciated, the present difficulty would probably never have been heard of.

The taking of the second, or junior mortgage, on the part of Emans, may have been injudicious; but I do not feel warranted in saying that the procurement of the first, on the part of Oliver, was fraudulent; more especially as Emans voluntarily relinquished his orignal lien of 1814, and took the second mortgage of Oliver in 1817, with full notice that the King mortgage of prior date was outstanding and uncancelled. But for that, the probability is, his original priority would never have been affected.

There is considerable evidence as to the incapacity of Emans. Doubtless his faculties were impaired; and if this business had been transacted by him alone, the case would have presented much stronger claims to the consideration of the court. But he had with him a friend and adviser, in whom he had confidence, and who, as it is proved by the testimony on both sides, was his general agent. Joseph Smith, a witness for defendant, says, that Wortman was his agent or assistant from the time of his first illness till his death; that during the years 1817, 1818, and 1819, the old man often went from home to settle accounts, with Peter Wortman to assist him. Under these circumstances, there is, as I conceive, no sufficient warrant for the interference of the court, on the ground of incapacity.

On the whole case, I am of opinion that the complainant is entitled to his decree for a sale, and that the money be appropriated in discharge of the two mortgages in their order of priority on the record.

Let it be referred to a master to take an account, making all just allowances for the use and occupation of the premises, &c.